## DIMAS *v.* ORTÍZ.

APELACIÓN procedente de la Corte de Distrito de

San Juan.

No. 43. Resuelto en Mayo 5, 1905.

DIVORCIO.—TRATAMIENTO CRUEL É INJURIAS GRAVES.—La frase *"una mujer cualquiera"*, dicha por el marido á su esposa, no es de suficiente gravedad para estimarla comprendida en la frase *"tratamiento cruel é injurias graves"*, que como causa de divorcio señala el art. 164 del Código Civil.

ID.—El mero acto de prohibir un marido, á su mujer, que visite á su madre, ó el de arrebatar, con alguna violencia, de manos de su esposa, una cartera ó portamonedas, no constituye el tratamiento cruel á que se refiere la ley como causa de divorcio.

ID.—Si de la prueba practicada en una causa de divorcio apareciere que ambos

conyuges, en ocasión anterior, se habían puesto de acuerdo para engañar al Tribunal y presentar una demanda de divorcio fundada en causa falsa, ello constituye motivo poderoso para dar poca credibilidad á su testimonio con respecto á las causas de su demanda posterior, y para estimar que sus fundamentos son asimismo falsos.

Id.—Abandono.—Separación voluntaria de ambos conyuges.—Si el marido hubiere consentido y procurado que su esposa se separara de él, no podrá después alegar con éxito el abandono, como causa de divorcio.

Query.—¿No envuelven el *trato cruel y las injurias graves,* que como causa de divorcio reconoce el Código Civil, el mal trato de *obras,* así como también el de *palabras?*

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. Moraza.*

Abogado del apelado: *Sr. Martínez Quintero.*

El Juez Asociado Sr. Wolf, emitió la opinión del Tribunal.

El día primero de Octubre de mil novecientos tres Ramón Dimas Hernández entabló demanda en la Corte de Distrito de San Juan contra María del Carmen Ortiz Rivera, sobre divorcio, fundada dicha demanda en la causa de abandono en que ella persistió durante más de un año. Ambos eran y son vecinos de San Juan y contrajeron matrimonio el día quince de Febrero de 1902. El día 5 de Diciembre de 1902 nació un niño, hijo de este matrimonio. El demandante alega que en la noche del día dos de Junio de 1902 la demandada, que se encontraba en cinta, abandonó el hogar conyugal y á pesar de los esfuerzos y súplicas del demandante, la demandada rehusó volver á vivir con él.

La demandada en su contestación á la demanda negó alegaciones hechas por el demandante, y mediante reconvención suplicó que se le concediera un divorcio de su marido, alegando como causa tratamiento cruel é injurias graves. La Corte de Distrito de San Juan negó la solicitud del esposo, accediendo á la de la esposa, dejando la custodia del niño bajo la patria potestad de la madre. Contra esta sentencia de dicha Corte el demandante interpone recurso de apelación.

En los considerandos 4 y 5 la Corte inferior dice lo siguiente:

"4o.—Considerando: que para que exista el trato cruel é injurias graves que establece el Código como causa para declarar un divorcio y la disolución civil de un matrimonio, expresada en el artículo 164, apartado 3o. del Código Civil, no es necesario que uno de los cónyuges haya llegado al extremo de golpear ó agredir corporalmente al otro, ó dirigirle frases groseras tales como las que usan habitualmente personas indecentes y de mala vida, bastando solamente que la conducta observada por el uno con respecto al otro haya sido de violencia, odio o desprecio, al extremo de hacer insoportable la vida conyugal, con perjuicio de la salud corporal, mental ó moral del otro cónyuge cuyos sentimientos hayan sido constantemente atropellados y para quien la vida se haya convertido en una prolongación de sufrimientos.

5o.—Considerando: que en el sentido últimamente expresado, la prueba practicada apreciada según la preponderancia de la misma, basta para demostrar que la parte demandante es culpable de trato cruel é injurias graves á su esposa, en atención conjuntamente á las palabras despreciativas de la relación conyugal, á la prohibición de visitar á su madre en la época de su embarazo, el hecho de quitarle la cartera ejerciendo fuerza, en un sitio público, corroborado como está lo declarado por la parte demandada y un testigo, por la actitud del marido, dispuesto como estaba á denunciar la supuesta estafa cometida por ella, de cuyo propósito tuvo que ser disuadido por otro testigo, su egoísmo, su tacañería y avaricia manifestados en las cartas que obran en los autos y á que se refiere uno de los resultandos de esta sentencia, y su descuido é indiferencia durante el embarazo de su esposa y la época de la lactancia del niño, aun prescindiendo por no haber sido corroborada por ningún testigo, de la alegación de la parte demandada, hecha en el acto de absolver posiciones, sobre la violencia física de que ella fué objeto por parte de su marido."

El Artículo 164 del Código Civil (texto inglés) prescribe como la cuarta causa de divorcio "cruel treatment or grave injury", y por esta y otras razones la Corte no lo estima necesario en el presente caso aprobar los preceptos consignados en el cuarto considerando. Sin embargo, presumiendo que aquel lenguaje es una exposición correcta de la ley vigente en Puerto Rico, somos no obstante de opinión que los hechos no justificaban á la Corte inferior á que concediera el divorcio. No existe

prueba, sino la declaración de la esposa, de que el apelante le dirigiese palabras insultantes. Sería una extensión muy grande del sentido de las frases "trato cruel ó injurias graves" hacerlas incluir palabras como "una mujer cualquiera"; las que son las únicas que ella declaró se le dirigieron.

Es cierto como que ha quedado demostrado por la prueba que en la noche del día 2 de Junio de 1902, ó antes, Dimas prohibió á su esposa que visitara á su señora madre. Sin embargo, esta fecha era seis meses anterior al nacimiento del niño y no existe prueba de que la apelada deseaba visitar á su madre debido á que la primera se encontraba en cinta. Sería de presumirse que el esposo estaba enterado de tal motivo por parte de su esposa, y que la prohibió arbitraria y cruelmente de lo cual no hay otro indicio que el mero acto de prohibición. Exceptuando siempre las declaraciones de la apelada, la única prueba positiva de que Dimas prohibió á su esposa que saliera, es la declaración de la madre del primero, y ésta declara también que el motivo de dicha prohibición eran insultos recibidos por él de la madre de su esposa.

La crueldad de que se le acusa y que se alega tuvo lugar antes de la noche del 2 de Junio no es lo que la ley define como crueldad, y como se ha visto las acusaciones referentes á la misma se derivan principalmente de las declaraciones de la apelante. En la noche del día 2 de Junio, según la declaración de uno de los testigos, se le vió á Dimas arebatar alguna cosa de las manos de su esposa en la Plazuela de San Francisco y se le oyó decir: "Ya puedes marcharte." El hecho de que se haya cometido un acto de violencia física queda contradicho por la confesión de la parte apelada que dice que temiendo ser "nuevamente atropellada" (no dice si por actos, insultos ó amenazas) entregó los diez dollars que su marido reclamaba. Esta Corte no ve como puede llamar el acto de arrebatarle la cartera, ó el dinero que se alega, la crueldad que define la

ley. .Es demasiado vago, inexplícito, y no tiene relación con lo que pasó antes ó después.

Las cualidades manifestadas por el apelante en sus cartas, serán como dice la Corte prueba de su egoismo, tacañería y avaricia pero nada más.

Después del día 2 de Junio de 1902 hay algunas pruebas de negligencia, de indiferencia, de avaricia y mezquindad; pero no hay prueba de crueldad, según el significado extensivo que la Corte inferior dá á esa palabra. Al contraio, hasta hay pruebas que demuestran que hizo de vez en cuando esfuerzos para complacer á su esposa ó hijos. Aceptando como ciertas todas las acusaciones de la demandada, no hay ningún caso de crueldad; sin embargo, gran parte de la prueba apreciada por la corte inferior consiste en declaraciones de la apelante. La confesión de ésta no merece consideración sino con respecto á lo que de ella se admita, y lo que ella dijo á otras personas en su propia defensa es de poca ó ninguna fuerza probativa aparte de que en cuanto á estos puntos su esposo contradice categóricamente lo que ella dice.

Hay además otra razón por la cual merecen poco crédito las declaraciones de ésta, cuya razón es que el día 5 de Junio de 1902, tres días después de la fecha que se alega fué forzosamente arrojada de la casa de su esposo, ella y su citado esposo se confabularon con el objeto de engañar á la Corte presentando una petición ficticia para divorcio. Aquella vez la solicitud se hizo con motivo de trato cruel al tratar de obligarla que cambiase su religión, y no es una presunción forzada inferir que si hubieran existido otras causas legítimas de divorcio, la primera demanda se hubiera fundado en tales causas. Parece que la solicitud de ella para divorcio fundada en el trato cruel era una reflexión tardía inducida por el proceder anterior de su marido al entablar su demanda.

No encontramos error alguno en el procedimiento de la Corte inferior al desestimar la solicitud del demandan-

te. Es verdad que su esposa abandonó su casa en la no-
che del día 2 de Junio de 1902, pero toda la prueba se opo-
ne á la teoría de que la abandonó sin su consentimiento.
No hay por qué dudar de la declaración del testigo con
respecto á lo que ocurrió en la Plazuela de San Francis-
co. Tomada esta prueba en conexión con la omisión de
hacer algún esfuerzo directo para comunicar con su espo-
sa; el haberse marchado á España sin comunicar con ella
demuestra que él no tenía especial inconveniente en que
ella viviera separada de su lado. Resulta claro, de su pro-
pia confesión, que primeramente se confabuló con su es-
posa para obtener un divorcio por causas falsas, y enton-
ces, por algún motivo no explicado, cambió de intención.

Sin embargo es una conclusión necesaria el que el de-
mandante debe haber querido que ella viviera separada
de él, y esto ha quedado corroborado por el testigo Don
Américo de J. Geigel que había sido el abogado defensor
del apelado, y que declaró que había tratado de reconci-
liar las partes sin resultado, porque ni uno ni la otra que-
rían vivir juntos. Aunque el apelante no le dijo á ella di-
rectamente que lo abandonase, la prueba tiende fuerte-
mente á demostrar que él estaba en connivencia con ella
en el abandono de su casa, ó que logró que se marchase.

De una consideración de todos los autos, la Corte es de
opinión que no se ha demostrado ninguna razón legal por
la cual no debían continuar viviendo juntas las partes, co-
mo esposos, y que la sentencia de la Corte de Distrito, de-
sestimando la solicitud del demandante, debe confirmarse
y que la sentencia de la misma Corte, concediendo la soli-
citud de la demandada, debe revocarse.

*Resuelto de conformidad.*

Jueces concurrentes: Sres. Presidente Quiñones y Aso-
ciados Hernández, Figueras y MacLeary.